Case number 24-1057, USA v. Lamon Simmons, oral argument, 15 minutes per side. Mr. Graham for the appellate. Mr. Graham, good morning. You may proceed. Good morning, Your Honor. At least the court, Scott Graham on behalf of Mr. Simmons. Your Honors, the issue before the court is whether or not the search warrant affidavit in this case was adequate to allow the search of the address at 799 Weatherwood. Of course, there are two residences in question, 799 Weatherwood and 321 Howell. The motion relates to 799 Weatherwood. Mr. Graham, can we look at the more detailed information in the Holly Street affidavit on this issue or can we not? Interesting question, Your Honor. As a general rule, I would say the answer is no, that you are bound by the four corners of the Weatherwood affidavit. Of course, that's only true for probable cause, right? Because the companion case to Leon did exactly that. I think that that did happen, but for probable cause, I don't think you can, but for other The reason I say it's an interesting issue is that by looking at the Holly Street affidavit, it becomes very clear how different the two properties are in terms of their use. The real gist of my argument here is that there is no allegation that Mr. Simmons ever went from Weatherwood to a controlled buy. There is no indication that anything was ever sold at Weatherwood. Of course, the cases are almost universal in the overall nexus inquiry. The cases are almost universal in presenting factual situations where there are controlled buys at a residence or outside a residence. The question is whether or not that generates probable cause to conduct the search. Of course, that's not the case. Counsel, don't the cases allow for this continuous and ongoing drug operations theory? Why isn't it enough to show there were multiple buys in this warrant and one was within seven days of the warrant being signed and executed? This guy, I think pretty everyone agrees, he lived at this residence. Was there enough in the warrant to show a continuous and ongoing drug operation? I think there wasn't, Your Honor. I understand the concept of continuous drug operation, drug trafficking operation. In this case, the other thing that I think distinguishes the case is the fact, the interjection of how into this equation. It's not just a matter of ... If in fact this search is appropriate, then we are at a situation where anyone determined to be a drug trafficker can have any place where they live searched at any time. Whereas here, it seems clear to me from the affidavit that the claim is that Mr. Simmons would go from Weatherwood to Holly and then to a controlled buy. There's another property involved. I see that as a key distinction. When that is the case, I think it separates these facts from the cases in which there is simply a continuous drug trafficking investigation that would link a real property like Weatherwood because I agree and I'm not contesting the fact that Mr. Simmons lived at Weatherwood. He did. What I think we have is a situation, and I think this affidavit is a good example. This affidavit is ... I don't know what the percentage is, but with the exception of a two and three of the affidavit, it is standard ... I think it's boilerplate because it goes into every one. One of the allegations is that in the affidavit is that Mr. Simmons is what they call a for-profit drug trafficker. Well, again, there's no allegation of quantity, and there is no allegation of using Weatherwood for anything. It is in regard to the allegations regarding what he allegedly did, it's all hollow in terms of connecting him or establishing a nexus with the drug trafficking. The bottom line from my perspective is the fact that we have hollow scrutiny here and the affidavit clearly is the spot where he allegedly goes to before control buys, and the fact that there is no evidence of any control buy link to Weatherwood distinguishes this case from the many cases that the court has cited and the basic principle that ... Counsel, let me ask you what distinguishes this case from the cases where we found good faith? I mean, what's your best case to show that there was no good faith here? Your Honor, we cited cases, I think in our reply, I believe that Neal may well be the best case. The reason that there is no good faith is that there is no effort. There is no effort to do the things that are required. There is no effort to establish a nexus. That's really the key to my claim. Can I take you back to probable cause for a second? Probable cause just requires a fair probability. Is that fair? It's a low standard. It's a low standard, yes. It's below preponderance of the evidence. It's just a probability. Let me give you a hypothetical and see what you think. Drug dealer A is a for-profit drug dealer. He has a stash house. He goes to get the drugs from the stash house. He then deals drugs during the day. He goes back and puts the drugs back and goes home. Is there any chance he kept money that he got from that drug transaction? There is a chance. I guess my response would be, well certainly I'd have to concede there is a chance. He receives money. Who knows if he puts that back in the stash house or keeps some in his pocket, but is that possibility? I guess the question is, is that possibility enough? We can consider human nature, right? If you do this, if you pay me $50 for drugs, I put it in my wallet. I take my wallet home and put it on the counter. We know now with certainty there are proceeds of the drug transaction in the house, right? Your Honor, I wouldn't concede that. If the drug dealer puts it in his pocket. Assuming that he drives directly to that house, yes. So to get probable cause to the officers, I mean the problem is what often happens is you're saying it almost has to be certainty, but the reality is it just has to be a probability. We can consider things. Reed talks about it and Sanders talks about it. We can consider human nature. We can consider the fact he's a drug dealer. We can consider the fact that it's ongoing. And when you consider all that, I don't see how you get around the fair probability standard. One of the ways that I would argue, Your Honor, that I get around that is by having no discussion whatsoever about the nature of the transactions that we totalize in terms of quantity and amounts. Why is that pertinent? Whether he's a dime dealer or a kilo dealer doesn't matter. The amount doesn't matter. Just explain to me why that would matter. Sure, Your Honor. What if it's the smallest possible sale and he gets $20 and his $20 is pocket evidence of drug trafficking as opposed to a kilo dealer where he's going to have an unexplained amount of money? But you agree even if it's a dollar, it's enough. If he has a dollar from a drug transaction and they discover it in his If they prove that the money was from a drug transaction, I agree that it links up. But the question is, do they have reason to think it's going to link up beforehand? When they get the warrant, that's my distinction. Counsel, did this warrant say that the officers could seek both drug evidence and evidence of proceeds? Do I have that right? Yes, Your Honor. The boilerplate language said that they could seek essentially everything, meaning to me, it says drugs, controlled substances, records. Right. And I guess to follow up on what Judge Lepar was asking, let's say I think there's probable cause to look for proceeds, but that it was a reach to say that you could have probable cause to believe there were drugs in this house. What do we do with that if the warrant was overbroad in that sense? Well, if in fact the warrant was overbroad regarding that, Your Honor, I think that the search is void because if they enter it for any purpose that's improper. I would argue that it can't stand. Okay. Any further? Thank you, Counsel. You'll have your rebuttal time. Thank you. Good morning, Your Honors, and may it please the Court. Kathryn Nelzel on behalf of the United States, and I want to thank the Court for accommodating my request to do the argument remotely. It was a big help, so thank you very much. There is probable cause here, and also good faith. I will start with probable cause, and I'd like to start actually with Your Honor's hypothetical about a dealer who we see going to a stash house and then to his residence, because of course that is what we have here. I want to say there are a lot of things that you could still expect to find at the residence, even if the person is using a stash house. That information was identified in both of the warrants, but specifically some things you might expect to find would be a firearm, for example, to protect the dealer. He needs protection even when he's not at his stash house. You might find drug ledgers, names of money owed or notes of money owed, people who owe money, names of customers, suppliers, phone numbers. There might be cash, as the Court noted, especially if you're using a stash house. Can I ask you a question? Can I ask a question? Yes. I mean, that's true. That's going to be true every time, right? Everybody who's suspected of drug activity will always, you can always link it to their house, I guess. It's always common sense or a possibility that they would have cash there or anything. So it's just, the rule is just, you can always search the residence then, right? Well, I don't think the Court would need a rule that broad to affirm in this case because, of course, the Court has the long line of cases saying that where there's evidence of ongoing drug trafficking, there is probable cause to search the residence. Well, Counsel, doesn't the case law suggest that that would typically, I think the word typically is in those cases, involve large quantities of drugs. And one of the things I'm struggling with, to be candid, is that this warrant, correct me if I'm wrong, said nothing about the amount of drugs that were being sold in those controlled buys. That's correct. This Court has said typically involving large amounts of drugs, but this Court also said in Reed that the Court has never held that that is a stand-alone requirement. I think a good way to think about it is that large amounts of drugs is a good proxy for indicating the type of drug dealer who might have significant evidence in his home, and that is drug dealers who are dealing for profit in a continuous, ongoing manner. So large amounts of drugs might be a great proxy to put in an affidavit, but we don't believe it's necessary, especially where there are other indicia in the affidavit, which there was in this case, that the person is dealing in a high volume. There were multiple controlled buys. The investigator, based on training and experience, cited a pattern of behavior, ongoing nature. There was implicitly, at least in the Weatherwood warrant, the use of a stash house. The informant had provided information on multiple drug traffickers, and he indicated that he had known Simmons for over a year. So there is every indication that this is a significant volume drug trafficker, and it's of an ongoing nature, and the warrant cited a controlled buy as recently as within the past seven days before seeking the warrant. So I don't think it's critical that there was no amount designated in these warrants, as long as there is indicia of the type of trafficking that is going on, which is a significant volume profit trafficking versus just a one-off drug trafficking where you sell to your friend, or if you're selling user amounts. An ongoing, for-profit drug trafficker is very likely to have some evidence in his house, and in fact, Simmons did have evidence in his house when they searched his residence. They found guns, ammunition, Manitola, which I had to look up, is apparently a sugar alcohol that is used as a cutting agent for drugs. I understand, but you would agree that we can't retroactively validate the warrant based on what was found? No, I completely agree. I'm just citing as an example that this case affirms that there are in fact things. It's reasonable to think that even where a stash house is involved, some evidence inevitably follows these types of traffickers to their homes. Is it possible to have a continual and ongoing operation that is not high in volume in terms of drugs? Yes, you can certainly have someone who is selling to a friend once a week for $20. Right, and I guess whether this warrant suggested that it was anything other than that. This warrant, there were multiple controlled buys with the confidential informant. They cited an 8 month investigation that they've been watching him. It is again implicit in the warrant that there was a stash house. I think it's more than implicit. It's pretty clear, explicit I think in the warrant that this was a stash house, but the warrant was for the residents, not the stash house. As far as I could read from the warrant, when he did the buys, he went to the stash house, did the buy, went back to the stash house, and then went home. That's true. The significance of the stash house in terms of your Honor's question is that the use of a stash house is indicative that this is probably a higher volume drug trafficker. If you've just got a little bit of marijuana that you're sharing with your friends every week, you're not likely to have a stash house. The significance is simply that it indicates someone who is a for-profit trafficker of a serious nature. I'm sorry counsel, what is your best probable cause case? I'm not talking about good faith, because you mentioned Reed. That's a good faith holding, correct? That's correct. So what's the best probable case to show that there was probable cause in this case? Honestly, I would cite just the ongoing drug trafficker cases of a large nature. There are several of those that we cited in our brief. I don't know that there is a particular case that is similar to these, but I think this case fits very clearly in that line of precedent. I also think to the extent the court has a concern about probable cause, there is no question I think that this case can be upheld on the good faith basis. In that instance, the court can consider the more fulsome information that was in the Holly Street affidavit, including there were parking lot sales of drugs. Simmons had a prior conviction for possession with intent to distribute more than 50 grams of cocaine. He was on supervised release that ended six months before the search, which suggests that he could have been having information or evidence of drug trafficking in his house after that ended. So there was a lot in the Holly warrant to suggest that this was a high volume drug trafficker, and then he fits of course neatly within the case law. Certainly, I don't think there would have been anything to put a reasonable officer on notice that that wouldn't qualify, knowing the information that they did. Again, the case law that existed at the time indicated that if there is ongoing trafficking, typically, but not always, in large quantities, there is probable cause. So a reasonable officer would have been permitted to rely on that. This court has of course said that its precedent on these cases is notoriously unsettled. These cases are very fact intensive, and of course, Simmons has argued that Reed should have put an officer on notice that this was not a probable cause. I think the opposite is true. Reed had no ruling on probable cause, and this court in Sanders said that type of case where there's no ruling is a particularly poor guide for officers on probable cause. So there's nothing in Reed that would have put these officers on notice that this was not okay. And Reed, in fact, reaffirmed the principle that when you have an ongoing drug trafficker, it's well established that there is probable cause. So I just think there's no question this can be upheld on good faith, but certainly we believe it can be upheld on probable cause as well. And if the court has other questions on that, I would love to answer them, because I really think that this is a case that should be held to have probable cause, where you've got an ongoing trafficker with the indicia that he is a profit trafficker. Any further questions? Thank you, counsel. Okay, thank you very much. I appreciate the court's time. Mr. Graham, you may proceed. Thank you. Notice I'd like to just make one point. The government argues that there is an indication that Mr. Simmons was a significant volume drug dealer, engaging in trafficking large quantities of controlled substances. I disagree with that. In fact, I just don't know where that information comes from. The information before the court is three controlled buys of an undescribed amount. That's it. So how do we jump from that to significant volume or large quantities? I don't think the affidavit does that. Can I ask you one question? How do you deal with our Sumlin and Jones cases? So our Jones says that drug dealers, evidence likely to be found where drug dealers live and read. We tend to set that aside and said that alone is not enough. But then in Sumlin we said, therefore an affidavit containing credible, verified allegations of drug trafficking, verification that said defendant lives at a particular residence, combined with the officer's experience that drug dealers keep evidence of dealing at their residence, can be sufficient to demonstrate a nexus. And then the double problem for you, it seems to me, is we have to give great deference to the magistrate judge's finding. And the magistrate judge had these cases on the books at the time he or she signed the affidavit. So we're fly-specking and second-guessing, but it seems to me that these cases at least provide evidence. Both of those are probable cause cases. I agree to both probable cause cases. Your Honor, I would turn, my argument would go back to what I think is, I think the proposition that I am here for is best described, I think, in Judge Griffin's concurring opinion in Sanders where we talk about, he talks about the rights to automatically search. I think that cases like someone and Jones, I do think they tie into this question of an uncertain body of decisional authority. But then how do we reverse it? How do we throw out a magistrate's ultimate conclusion? I mean, when we give great deference, when we just need to find a substantial basis, and when there is case law supporting an affidavit like this, I mean, it seems pretty problematic. Well, my only response is that the presence of everything that relates to the Holiday Street Address makes this different. That's my response. You sure? Okay. Thank you very much, Mr. Graham. We appreciate your argument and the case will be submitted. Thank you both for attending via Zoom.